**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 26-CR-66-raw |
| JIN ZHAO CHI, | ) | |
| Defendant. | ) | |

**MOTION TO SUPPRESS STATEMENTS**

**COMES NOW,** Jin Zhao Chi, by and through his CJA attorney of record, Marna Franklin, and moves this Court for an Order suppressing any and all custodial statements resulting from his un-*Mirandized* interrogation on March 19, 2025. Counsel for the government, T. Cameron McEwen, has indicated opposition of this motion.

**STATEMENT OF FACTS**

1). On February 25, 2025, Special Agent Joseph Hubbard with the U.S. Environmental Protection Agency, Criminal Investigation Division, of the Southwest Branch, received information from United States Customs regarding

1

the possible illegal importation of pesticides with Chinese labeling.   Information provided to SA Hubbard included the fact that the shipment was addressed to the address of 11985 NS 3580 Road in Seminole, Oklahoma.

2).  On March 3, 2025, SA Hubbard interviewed Customs Port Director Pequano, who had determined through a google translator that the contents of the package appeared to be illegally smuggled Chinese-labeled pesticides, and the Pequano informed Hubbard that the package was address to "A Chi LU" with a phone number of 626-462-3162.    Pequano researched the phone number and linked it to an October 2024 citizenship application alledgedly submitted by the defendant, Jin Zhao Chi.

3).  On March 14, 2025, SA Hubbard sought a search warrant for the premises located at 11985 NS 3580, in Seminole, Oklahoma.  (25-MJ-00084-JAR, Doc. 1).   Included within "Probable Cause" section within the sworn application for the warrant, SA Hubbard referenced the February 25, 2025, package interception address to "Lu, A Chi" at the premises, along with the reference

2

telephone number. (Doc. 1, paragraph 17).   SA Hubbard further referenced that on November 3, 2022, Homeland Security Investigations (HSI) and the Oklahoma Bureau of Narcotics (OBN) started an investigation for an illegal marijuana grow located at 1420 Smokey Ridge Rd., in Ardmore, Oklahoma.    SA Hubbard further swore within the affidavit that an October 2024 United States Citizenship and Immigration Services application had been submitted by CHI, Jin Zhao, and that 1420 Smokey Ridge Rd, Ardmore, was associated with Chi's phone number that was listed on the DHL package that was being sent to the premises to be searched. (Doc 1, paragraph 23).

4). The warrant to be issued was contingent on the receipt of the package via tracking device that would alert agents to the package being opened.

5). On Wednesday, March 19, 2025, the search warrant was executed. Thirteen (13) separate vehicles drove into the private drive and approached the main house of the premises.   Reports provided by the government through discovery do not reveal the exact time of the warrant execution, but reports do

indicate that HSI Agent Derewonko notified SA Hubbard that there was an indication at 10:53 a.m. that the package had been opened. "The EPA then executed the search and seizure warrant at the residence." (Discovery, Bates stamp 267).

6). According to the same HSI report, Agent and Task Force Officers (TFO) that participated were:

1) HSI SA Jennings,
2) HSI SA Derewonko,
3) HSI SA Theede,
4) HSI Group Supervisor Reinosa,
5) TFO Titsworth,
6) TFO Duncan,
7) TFO Helm, and
8) TFO Stach.

Reports further indicate the presence of:

9) SA Hubbard,
10) OBN Agent Robbins,
11) SA Overhauser with CID, and
12) Agent Velazquez with OBN.

4

The government has suggested that local law enforcement officers were also present at the scene.

7).  It has been confirmed that there is no body camera footage from any HSI or OBN agents memorializing the actions during the warrant execution.

8).  Upon entry onto the premises,  Mr. Chi, was immediately ordered from inside one of the premises' buildings and directed to sit down on an outside curb.  Shortly thereafter, Mr. Chi was pat searched by a large individual wearing camouflage tactical gear.

9).  Mr. Chi was handcuffed and without access to his cellular phone during the entirety of the execution of the search warrant.

10).  Mr. Chi is a Chinese national and does not speak the English language. As testified by the government's witness during his detention hearing held on July 9, 2026, Mr. Chi had no known criminal history and thus has had limited contact with United States Law Enforcement Officers.

11).  During the execution of the search warrant, Mr. Chi needed to use the

bathroom.  He was disallowed the ability to go anywhere on the premises without direct supervision by a law enforcement officer armed with an assault rifle.

12).  According to reports and recordings provided by discovery, at 12:23 p.m., Special Agent Holden, along with Agent Robbins of the Oklahoma Bureau of Narcotics, conducted their custodial interview of Dianlin Jiang.   Mr. Jiang is a Chinese National with little to no criminal history.  According to discovery provided, Agent Robbins speaks fluid Mandarin and assisted in communication with Mr. Jiang.   Prior to asking Mr. Jiang questions, SA Holden presented Mr. Jiang with two Advice of Rights forms, both in English and Chinese language.  A copy of Advice of Rights form in English has a heading reflecting the United States Environmental Protection Agency and is attached.  (Exhibit 2)    The Chinese "Simplified Characters" form provided to Mr. Jiang is also attached. (Exhibit 3).

13).  According to additional reports and recordings provided by Discovery, at approximately 12:22 p.m., just one minute before Mr. Jiang was being advised

of his rights pursuant to *Miranda*, Agents Overhauser and Velazquez conducted their custodial interview of Mr. Chi.   Neither of them spoke Chinese, so Agent Overhauser utilized a telephonic translation service in starting the interrogation. According to the report authored by SA Overhauser on April 1, 2025,  "Mr. Chi was advised as to the nature of the recorded interview and that his participation was voluntary."   The recording of the interview **does not** support Overhauser's written report.

14).   The recording of the interview by Agents Overhauser and Velazquez reflects that Mr. Chi was not advised of the nature of the interview.    Agent Overhauser's introduction that he is a special agent with the EPA was not translated to Mr. Chi.  The term "EPA"  was not translated.  The statement that Agent Overhauser stated he was "CID" was not translated nor explained to Mr. Chi.   Prior to being asked his name through the translator, Mr. Chi was not advised by Agent Overhauser that the Environmental Protection Agency Office of Criminal Enforcement possessed a search warrant,  advised that he free to leave, or

that he free to not answer the questions posed by law enforcement. (See, partial transcription of recorded interview, Exhibit 1)

15). At no time during the course Agent Overhauser's interrogation, was Mr. Chi presented with a copy of Exhibit 3 to read, nor was he ever advised of his *Miranda* warning through the telephonic translation service.

## ARGUMENTS & AUTHORITIES

No person…shall be compelled in any criminal case to be a witness against himself… U.S. Const. Amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 467 (1966), the Supreme Court declared that a custodial interrogation generates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he does not otherwise do so freely." The Supreme Court further declared, "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." 384 U.S. 436, 478. The government may not use statements made by a suspect

8

under custodial interrogation unless: (1) the suspect has been apprised of his Fifth Amendment rights; and (2) the suspect knowingly, intelligently, and voluntarily waived those rights. *Id.* at 444-45. These safeguards require that "custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981). In *Dickerson v. United States*, 530 U.S. 428 (2000), the Supreme Court reaffirmed the *Miranda* doctrine. Custodial interrogation "refers to 'either express questioning or its functional equivalent'— i.e., 'words or actins on the part of the police that that police should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Cash*, 733 F.3d 1264, 1276-77 (10th Cir. 2013)(quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). "The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, at 301.

At the time of his custodial interview, Mr. Chi was the only named

individual whose information was included within the sworn application for search warrant and thus at the time of the interrogation he was the primary target of the investigation: an investigation so serious that no less than thirteen vehicles and twelve named agents as well as local law enforcement officials arrived at the scene. Tactical gear and assault weapons were being utilized at the scene.

Agent Overhauser clearly should have known that his questions, starting with "What do you do here at the operation? What is your job?" was reasonably likely to elicit an incriminating response giving the particular situation, circumstances, and context. The questions posed by Agent Overhauser were clearly and directly linked to the suspected offense.

A waiver is knowing and intelligent if, under the totality of the circumstances, it is made with a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Only if the totality of the circumstances surrounding the interrogation reveal both an

uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *U.S. v. Morris*, 287 F.3d 985 (10th Cir. 2002). "The purpose of the 'knowing and voluntary' inquiry…is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez v. Moran*, 509 U.S. 389, 401, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). When a defendant waives his constitutional rights, he must be "made aware of the dangers and disadvantages…so that the records will establish that 'he knows what he is doing and his choice is made with eyes open." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed. 562 (1975). *U.S. v. Burson*, 531 F.3d 1254, 1257 (10th Cir. 2008).

At the inception of the search warrant execution, Mr. Chi was secured against his will. Having no prior law enforcement experience, he was completely unaware of the dangers and disadvantages of answering Agent Overhauser's questions, or even that he had a right to ***not*** answer the questions. The agents

11

interrogating Mr. Jiang (who was not named in the search warrant application), had been subjected to the same exact circumstances as Mr. Chi, and they recognized the need to provide a written warning in Mr. Jiang's native language. Why Mr. Chi was not provided the same admonition of his rights is a mystery. Not only was Mr. Chi never told he did not have to answer questions, he certainly was not advised that he had a right to have his attorney present during the questioning.    Very simply, Mr. Chi did not have any awareness of the nature of his rights that he was abandoning, nor the consequences of the decision to abandon those rights before answering SA Overhauser's questions because he was told his rights pursuant to the Fifth Amendment.   Accordingly, the answers to Agent Overhauser's questions were obtained in violation of Mr. Chi's rights under the Fifth Amendment, and his Motion to Suppress ought to be sustained.

CONCLUSION

A *Miranda* warning was never provided to Mr. Chi  despite his custodial status at the time of his custodial interrogation by SA Overhauser and Valazquez.

12

Any statements made by Mr. Chi when being questioned by law enforcement on

March 19, 2025, and the fruits thereof ought to be suppressed at trial.

Respectfully Submitted,


s/Marna Franklin
Marna Franklin,
Attorney at Law
620 N. Robinson, Suite 203
Oklahoma City, OK 73102
(405) 239-2454 Telephone
(405) 313-0610 Cell
mfranklin@demandproof.com
ATTORNEY FOR DEFENDANT


CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants appearing in this case.

 s/Marna Franklin

Marna Franklin